IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| ANGELA SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 4:17-cv-00853-LSC |
| ) | |
| NANCY BERRYHILL, ) | |
| Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

**I.  Introduction**

The plaintiff, Angela Smith, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI"). Ms. Smith timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Smith was 47 years old on the date of the Administrative Law Judge's ("ALJ's") decision, and she has an eighth grade education. (Tr. at 204, 209.) Her past work experiences include employment as a housekeeper in a hospital setting, tray worker, and personal care aide. (Tr. at 40, 196-99.) Ms. Smith alleges that she

1

became disabled on May 23, 2013, due to musculoskeletal and blood conditions. (Tr. at 208.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v.*

*Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the Administrative Law Judge ("ALJ") first found that Ms. Smith has not engaged in SGA since October 30, 2013, the date of her SSI application. (Tr. at 29.) According to the ALJ, Plaintiff's cervical radiculitis, brachia neuritis, chronic pain syndrome, lumbar spondylosis, knee pain, osteoarthritis, abdominal pain, obesity, insomnia, hypertension, and borderline intellectual functioning are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, she found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 33.) The ALJ determined that Ms. Smith has the following RFC:

> to perform light work as defined in 20 C.F.R. [§] 416.967(b) except that the claimant has the following non-exertional limitations that reduce her capacity to perform the full range of light work: She can lift and/or carry twenty pounds occasionally and ten pounds frequently;

can stand and/or walk six hours in an eight-hour day; can sit six hours in an eight-hour day; can occasionally climb ramps and stairs; can never climb a ladder, rope, or scaffolding; can occasionally stoop, kneel, crouch, and crawl; can never work at unprotected heights, around hazardous machinery, or driving commercial vehicles; can understand, remember, and carry out simple instructions; can maintain attention and concentration for two hour time periods in order to complete an eight-hour workday; and can adapt to changes in the workplace that are introduced gradually and infrequently.

(Tr. at 34-35.)

Next, the ALJ obtained the testimony of a Vocational Expert ("VE") and determined at steps four and five of the sequential evaluation process that Plaintiff is capable of performing her past relevant work as a housekeeper in a hospital and a tray worker and that she could also make an adjustment to other jobs that exist in significant numbers in the national economy, such as hotel housekeeper, garment sorter, and laundry sorter. (Tr. at 40-41.) The ALJ concluded her findings by stating that Plaintiff has not been under a "disability," as defined in the Social Security Act, since October 30, 2013, the date the SSI application was filed. (Tr. at 42.)

## II. Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the

Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. Discussion

Ms. Smith alleges that the ALJ's decision should be reversed and remanded because the Appeals Council erred in refusing to review her case. According to Plaintiff, taking the additional evidence she submitted to the Appeals Council into consideration, her impairments meet or equal the severity of Listing 12.05, which, she argues, renders her presumptively disabled under the regulations.

"With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process," including before the Appeals Council. *Ingram v. Comm'r*, 496 F.3d 1253, 1261 (11th Cir. 2007). The Appeals Council has the discretion not to review the ALJ's denial of benefits. *See* 20 C.F.R. § 416.1470(b). However, "[t]he Appeals Council must consider new, material and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence

currently of record.'" *Ingram*, 496 F.3d at 1261; *see also* 20 C.F.R. §§ 404.970(b), 416.1470(b). The new evidence is material if "it is relevant and probative so that there is a reasonable possibility that it would change the administrative result." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). The new evidence is chronologically relevant if "it relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 404.970(b). When considering the Appeals Council's denial of review, a reviewing court considers such new evidence, along with all the other evidence in the record, to determine whether substantial evidence supports the ALJ's decision. *See* 20 C.F.R. §§ 404.970(b), 416.1470(b); *Ingram*, 496 F.3d at 1266.

Plaintiff submitted several items of new evidence to the Appeals Council after the ALJ's October 2015 denial of her case, including a psychological evaluation completed by David Wilson, Ph.D., at her counsel's request, in December 2015. (Tr. at 8-12.) The Appeals Council denied Plaintiff's request for review and stated in the denial that the Council "found no reason under our rules to review the Administrate Law Judge's decision." (Tr. at 1). The Appeals Council further stated:

> We also looked at the report from Gadsden Psychological Services, L.L.C., dated December 8, 2015 (5 pages) [i.e., Dr. Wilson's evaluation]. The Administrative Law Judge decided your case through October 15, 2015. This new information is about a later time.

8

> Therefore, it does not affect the decision about whether you were disabled beginning on or before October 15, 2015.

(Tr. at 2). Among other things, Dr. Wilson reported in December 2015 that Plaintiff obtained a full scale IQ score of 54 on the Wechsler Adult Intelligence Scale IV. (Tr. at 10-11). Plaintiff contends that, based on Dr. Wilson's IQ test results, she should be found disabled at step three of the sequential evaluation process pursuant to subparts (B) and (C) of Listing 12.05, which pertains to intellectual disability.

Plaintiff's claim fails because, assuming the results of Plaintiff's IQ test are "new" evidence, in that they were not in the record before the ALJ's decision, and that they are also "chronologically relevant" evidence, because it is widely accepted that an IQ test creates a rebuttable presumption of a "fairly constant" IQ throughout a claimant's life, *see Hodges v. Barnhart*, 276 F.3d 1265, 1268-69 (11th Cir. 2001), they are not "material" evidence because there is no reasonable possibility that they would change the administrative result. This is because even with the low IQ score, Plaintiff has not shown that she suffers from the deficits in adaptive functioning to the level required to meet or equal subparts (B) or (C) of Listing 12.05.

To meet a listing, Plaintiff must have a diagnosis included in the listings and must provide medical reports documenting she met all the specific criteria of the listing. *See Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002); 20 C.F.R. § 416.925(a)-(d). To medically equal a listing, Plaintiff's impairment must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a); *see Wilson*, 284 F.3d at 1224. "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

>Listing 12.05 states in relevant part:
>
>Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
>> . . .
>
>> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
>> OR
>
>> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.05. The introductory material to the mental disorders listings clarifies Listing 12.05, stating:

> The structure of the listing for intellectual disability (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, [the Commissioner] will find that your impairment meets the listing.

20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.00(A). Thus, as the Eleventh Circuit has noted: "To be considered for disability benefits under section 12.05, a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The regulations state that "adaptive activities" include activities of daily living such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, and caring for personal needs. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00C(1). The Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") further explains that, "Adaptive functioning refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone of their particular age group,

sociocultural background, and community setting." American Psychiatric Ass'n, DSM-IV, 42 (4th ed. 2000, Text Rev.).

The ALJ had already found that Plaintiff's impairments did not meet or equal Listing 12.05 because, not only was there no IQ score on record, but she also failed to show the required deficits in adaptive functioning that manifested before age 22. (Tr. at 33.) Even though Plaintiff submitted the results of an IQ test performed after the ALJ's denial decision, Plaintiff still has not shown that her mental condition satisfied the diagnostic criteria in Listing 12.05 of significant deficits in adaptive functioning. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.05. As the ALJ noted, Plaintiff's school records indicate that she was placed in special education classes during at least her seventh grade school year, if not other years as well. (Tr. at 33, 53, 241-48). As also noted by the ALJ, Plaintiff testified that she had a hard time reading and understanding things and that if she were awarded benefits she would still need assistance in paying her bills. (Tr. at 77). However, Plaintiff also reported a history of significant functional abilities in her activities of daily living. (Tr. at 33). For example, she stated in her function report that she was capable of paying bills and counting change, something she later contradicted at her hearing. (Tr. at 33, 227). Plaintiff also obtained her driver's license, passing the driving portion of the test on the first attempt and the written

portion of the test on the second attempt. (Tr. at 33, 56-57, 227). She reared three children on her own, who are now adults, except that her uncle watched them while she worked when they were young. (Tr. at 33, 61, 63). She also reported that, although her adult daughter lives with her, Plaintiff is currently rearing her eight-year-old adopted son, whom she bathes, feeds, washes clothes for, and gets ready for school on a daily basis. (Tr. at 33, 66-68).

The aforementioned evidence in the record is substantial enough to support the ALJ's determination that Plaintiff lacks the necessary deficits in adaptive functioning to satisfy Listing 12.05, regardless of the IQ score she later submitted to the Appeals Council. *See Read v. Comm'r of Soc. Sec.*, 688 F. App'x 898, 902 (11th Cir. 2017) (despite IQ of 58, claimant lacked necessary deficits in adaptive functioning, because he graduated high school with a special diploma; took care of his young daughter on his own; and was able to dress, bathe, shave, feed himself, and use the toilet); *Gibbs v. Comm'r, Soc. Sec. Admin.*, 686 F. App'x 799, 802 (11th Cir. 2017) (claimant lacked necessary deficits in adaptive functioning because she lived alone, cared for her daughter, did chores, handled money, had a driver's license, shopped, and volunteered at church); *Nichols v. Comm'r, Soc. Sec. Admin.*, 679 F. App'x 792, 796-97 (11th Cir. 2017) (despite IQ of 59, claimant lacked necessary deficits in adaptive functioning, because she had a driver's license,

completed high school with a certificate, had a history of unskilled work, and successfully raised two children on her own); *Hunt v. Soc. Sec. Admin., Comm'r*, 631 F. App'x 813, 816 (11th Cir. 2015) (despite IQ of 51, claimant lacked necessary deficits in adaptive functioning, because he had a long work history and was able to perform personal grooming, dress, prepare simple meals, drive, shop, pay bills, count change, read, watch television, and spend time with others).

Plaintiff contends that her case is similar to *Swindler v. Social Security Administration, Commissioner*, Case No. 7:15-cv-02130-SGC, 2017 WL 1196952 (N.D. Ala. March 31, 2017), another case in which the claimant submitted a low IQ score resulting from a test administered by Dr. Wilson after the ALJ had already issued his opinion. However, unlike in this case, the ALJ in *Swindler* had never even considered whether the claimant's impairments met or equaled Listing 12.05. *Id.* at *2. Further, the district court found evidence in the record to show that the claimant had significant deficits in adaptive functioning, such as evidence that he was "pulled [] out" of special education classes in school in the ninth grade and placed in a state hospital, that prior to leaving school in the ninth grade he received all "F's", and that a counselor had indicated that he suspected the plaintiff had a developmental disability. *Id.* at *5. This evidence led the district court to conclude that, taking into account the low IQ score submitted by the claimant for the first

time to the Appeals Council, there was a reasonable possibility that the ALJ's decision would have changed, such that it was reversible error for the Appeals Council to have refused to consider the IQ score on appeal. *Id.* As shown above, the record in Plaintiff's case does not reveal the requisite deficits in adaptive functioning to meet Listing 12.05.

Plaintiff also urges this Court to address her assertion that the Appeals Council failed to consider the new evidence using the same analysis that was used in the Eleventh Circuit's opinion in *Washington v. Social Security Administration, Commissioner*, 806 F.3d 1317 (11th Cir. 2015). In *Washington*, as in this case, the claimant submitted a psychological evaluation report by Dr. Wilson to the Appeals Council after the decision of the ALJ. *Id.* at 1319. However, the newly submitted evidence in *Washington* did not concern the claimant's intellectual abilities, but rather his symptoms of depression, hallucinations, panic attacks, crying spells, and suicidal ideation. *Id.* In *Washington* and in the other cases on which Plaintiff relies, the court found the evidence submitted to the Appeals Council to be "material", i.e., reasonably possible to change the administrative result. That is not the case here.

Finally, Plaintiff asserts that this case should be reversed because the Commissioner cannot advance a "*post hoc* rationalization" for the Appeals

Council's refusal to consider the additional evidence. She explains that the Appeals Council refused to consider Dr. Wilson's evaluation because it was "about a later time" (tr. at 2), but that the Commissioner now argues that the evidence was immaterial. The unpublished district court cases Plaintiff cites in support are not only not binding but also distinguishable in that they address the narrow issue of an ALJ's failure to state with particularity the weight he or she was giving to a treating physician's opinion, an issue wholly distinct from that being considered here. As the Eleventh Circuit has held, a remand to have the ALJ perfect the record would serve no practical purpose where it would not alter the ALJ's findings, and would be a waste of judicial and administrative resources. *See Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997); *Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *see also Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 656 (1st Cir. 2000) ("a remand is not essential if it will amount to no more than an empty exercise"); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

In sum, because substantial evidence supports the ALJ's finding with respect to Listing 12.05, there is no reasonable possibility that Dr. Wilson's evaluation

would change the ALJ's decision, and thus, the Appeals Council was not required to consider it.

## IV. Conclusion

Upon review of the administrative record, and considering all of Ms. Smith's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON FEBRUARY 13, 2019.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704